UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:13-CR-49-GFVT-HAI-2 |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| CHRISTOPHER BENTLEY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

On referral from District Judge Van Tatenhove (D.E. 395), the Court considers reported violations of supervised release conditions by Defendant Christopher Bentley.

Judge Van Tatenhove entered a judgment against Defendant in December 2014 following a guilty plea to participating in a conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & 846.  D.E. 321.  Defendant received a prison sentence of 46 months, followed by a three-year term of supervised release.  *Id.*  Defendant began his term of supervised release on December 6, 2017.

## I.

On September 7, 2918, the United States Probation Office (USPO) issued the Supervised Release Violation Report ("the Report") that initiated these proceedings.  The report charges three violations.  According to the Report, on September 7, 2018, Defendant submitted a urine sample that, upon instant testing, indicated methamphetamine.  Defendant signed an admission stating that he "wanted to have some fun and used methamphetamine and hydrocodone with 'a couple of girls' approximately three days ago."

Based on Defendant's admission to using methamphetamine and hydrocodone, Violation #1 charges Defendant with violating Standard Condition #7, which prohibits, among other things, using any controlled substance except as prescribed by a physician. This is a Grade C Violation.

Violation #2 charges Defendant with violating the condition that he not commit another federal, state, or local crime. Noting the Sixth Circuit's decision that use of a controlled substance includes possession and Defendant's prior drug conviction, this violation charges Defendant with conduct that would be a federal crime, that is, possession of methamphetamine, a Schedule II controlled substance. Such conduct would be a Class E felony pursuant to 21 U.S.C. § 844(a), Simple Possession of a Controlled Substance. This is a Grade B violation.

Similarly, Violation #3 also charges Defendant with violating the condition that he not commit another federal, state, or local crime. Noting the Sixth Circuit's decision that use of a controlled substance includes possession and Defendant's prior drug conviction, this violation charges Defendant with conduct that would be a federal crime, that is, possession of hydrocodone, a Schedule II controlled substance. Such conduct would be a Class E felony pursuant to 21 U.S.C. § 844(a), Simple Possession of a Controlled Substance. This is a Grade B violation.

The Court conducted an initial appearance pursuant to Rule 32.1 on October 25, 2018, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 400. The United States moved for interim detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id.*

At the final hearing on November 5, 2018, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 401. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all three violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violations as described in the Report. In the Supervised Release context, the Sixth Circuit treats controlled substance use as equivalent to possession. *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). The United States thus established Violations #1, #2, and #3 under the standard of § 3583(e).

## II.

The Court has evaluated the entire record, including the Report and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all of the § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to participating in a conspiracy to manufacture methamphetamine, a Class C felony. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(C); 846. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violation #1 and Grade B violations with respect to Violations #2 and #3. Given Defendant's criminal history category of I (the category at the time

of the conviction) and a Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter 7, is four to ten months.

A court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b), (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Given the nature of Defendant's conviction, pursuant to 18 U.S.C. § 841(b)(1)(A), there is no maximum term of supervised release that can be re-imposed.

### III.

At the final hearing, the parties argued for different penalties. The United States urged the Court to revoke and impose a sentence of six months of imprisonment, followed by two years of supervised release. The defense requested time served, followed by reimposition of three years of supervised release.

The government pointed to several factors that it believed were related in this case: the breach of trust, the nature and circumstances of the original offense, and Defendant's history and characteristics. First, the government pointed to three mitigating factors. Defendant has a low criminal history score of I. He admitted his drug use and signed the admission form. And this was his first violation.

On the other hand, the government argued that other facts "blunt the mitigating factors." Defendant's admission only came after his urine tested positive for methamphetamine. His low criminal history is incorporated within the advisory Guidelines Range. And Defendant caused a

---

[1] *See* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

4

similar issue during his period of pretrial release, which was revoked due to a positive drug screen for methamphetamine. According to the government, this bond revocation indicates that Defendant knows from prior experience what can happen when he fails to follow release conditions.

The government also stressed that Defendant's methamphetamine use ties in with his underlying offense—obtaining pseudoephedrine for purposes of meth production. It was noteworthy that Defendant said in his presentence interview that he had only used meth three times and did not like it. In other words, although he does not appear to be addicted to meth, he has now violated release conditions twice for meth use. These circumstances suggest the meth use is more of a choice than an addiction. In contrast, hydrocodone, according to Defendant's presentence interview, is his historical drug of choice. He has now also returned to using that drug, which he also used during the underlying conspiracy. Finally, the government also noted that Defendant must have obtained the meth illicitly. The combination of these facts, according to the government, called for a sentence above the bottom of the Guidelines Range.

The defense stressed that Defendant had been very candid with the probation officer in admitting that he used the drugs because he was having fun with girls. Defendant did well for nine months and had been employed at a local cookie factory. On this last point, the probation officer informed the Court that Defendant had stated that he had quit working to pursue disability payments. The defense argued that the Court's objective should be to deter criminal behavior, and that the best way to do this was simply to re-start the supervised release clock: give him revocation with time served, followed by a new three-year term of supervised release.

Defendant addressed the Court. He apologized to his probation officer and to the Court. He said he would make sure this never happens again. He also explained that, although he had

been ordered to participate in the RDAP program, he did not qualify during his incarceration because his sentence was too short.

## IV.

Congress mandates revocation in a case of this nature.  By statute, the Court must revoke Defendant because he possessed a controlled substance.  *See* 18 U.S.C. § 3583(g)(1); *United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession).

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.  In this case, there is not much information in the PSR that is either aggravating or mitigating.

The nature and circumstances of Defendant's underlying conviction are serious, of course.  *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release).  He obtained pseudoephedrine so co-conspirators could use it in meth production.  And he was addicted to hydrocodone at the time.  His new use of meth and hydrocodone harkens back to the circumstances underlying his conviction and suggests that Defendant remains willing to engage in criminal activity.

Concerning his personal history and characteristics, Defendant deserves some credit for being candid with his probation officer.  On the other hand, Defendant received a lenient sentence in 2014.  Although his Guidelines Range was 57-71 months, Defendant was sentenced to 46 months of incarceration.  Prior leniency provides a ground for imposing a harsher sentence upon revocation.  Application note 4 to U.S.S.G. § 7B1.4 counsels that when there was a downward departure at sentencing, "an upward departure may be warranted" on revocation.  Here, there was a significant downward departure of eleven months.

6

This prior leniency also goes to the seriousness of the breach of the Court's trust. The Guidelines suggest that the primary wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into § 3583(e). Here, Defendant has been given grace before. He has also displayed a somewhat casual attitude toward his conditions of release. After previously having his bond revoked for drug use, Defendant again used drugs illegally, and admittedly did it only for fun.

The need to avoid unwarranted sentencing disparities among defendants with similar records who have committed similar violations is addressed by the recommendation of a sentence within Defendant's Guidelines Range.

A sentence of five months is within the Guidelines Range and, for the reasons stated above, the Court finds it is sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e). This sentence credits Defendant for his candor but recognizes, on the other hand, that he has been shown leniency before and has a casual attitude towards supervision. The Court encourages Defendant to seek work again because the probation officer noticed a negative change in his demeanor after he left his job. The Court will also recommend that Defendant, upon release, be put back on supervision for two years. No new conditions are necessary, and neither party requested any.

## V.

Based on the foregoing, the Court **RECOMMENDS:**

(1)     That Defendant be found guilty of all three violations.

7

     (2)      Revocation with a term of imprisonment of five months, followed by a 24-month term of supervised release.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), **within fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 153-54 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 6th day of November, 2018.

,



Signed By:

*Hanly A. Ingram*

United States Magistrate Judge