UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Crim. No. 6:13-cr-00049-GFVT-HAI-2 |
| | ) | |
| V. | ) | |
| | ) | |
| CHRISTOPHER BENTLEY, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

This matter is before the Court on Defendant Christopher Bentley's alleged violations of the terms of his supervised release. [*See* R. 442.] Following the final hearing before Magistrate Judge Hanly A. Ingram, Judge Ingram issued a Recommended Disposition concerning Mr. Bentley's alleged violations. [R. 459.] Mr. Bentley objected to the Recommended Disposition on two grounds and, pursuant to his right of allocution, this Court held an allocution hearing. [R. 460; R. 464.] For the reasons that follow, the Recommended Disposition [R. 459] will be partially adopted as the Court's opinion.

**I**

**A**

Judge Ingram's Recommended Disposition accurately sets forth a more detailed account of the factual and procedural background of the case. In addition to what the Court summarizes in its discussion below, the Court incorporates Judge Ingram's discussion of the record into this Order.

Judgment was originally entered against Mr. Bentley in December 2014, after he pled

guilty to participating in a conspiracy to manufacture methamphetamine. [R. 459 at 1; R. 321.] At that time, Mr. Bentley was sentenced to forty-six months of imprisonment, followed by a three-year term of supervised release. [R. 321.] Mr. Bentley then began his initial term of supervised release on December 7, 2017. [R. 459 at 1.]

On September 7, 2018, the Defendant's supervised release was revoked for the first time after he was found guilty of three violations. *Id.* at 1–2. These violations each stemmed from Mr. Bentley testing positive for methamphetamine and hydrocodone and his subsequent admission to use of both of these drugs. *Id.* As a result of these violations, Mr. Bentley was sentenced to five months of imprisonment, followed by twenty-four months of supervised release. *Id.* at 2. On March 26, 2019, another USPO report was filed alleging an additional violation by Mr. Bentley relating to conduct on the day he was released from prison, March 22, 2019. *Id.* The violation, however, was eventually dismissed for procedural reasons. *Id.* On April 12, 2019, Mr. Bentley was again released and continued his additional term of supervision. *Id.*

On September 25, 2019, the United States Probation Office issued a Supervised Release Violation Report which initiated these proceedings. *Id*. Mr. Bentley made his initial appearance on October 21, 2019 and was remanded to custody at that time. [*Id.* at 3; R. 446.] The Report issued by the USPO charged Mr. Bentley with two violations following a September 15, 2019 arrest and citation for four violations of state law. [R. 459 at 2.] Specifically, Violation #1 alleges that Mr. Bentley violated the condition of his supervised release which requires him to not commit another federal, state, or local crime. *Id.* at 2. Such conduct would constitute a Grade C violation. *Id.* Violation #2 alleges that Mr. Bentley violated the condition that requires him to notify his probation officer within 72 hours of any arrest or questioning by law

enforcement. *Id.* at 3. This conduct would also constitute a Grade C violation. *Id.*

At the final hearing before Judge Ingram on December 17, 2019, Mr. Bentley contested both violations and an evidentiary hearing was held. [*Id.* at 3; R. 456.] As a basis for Violation #1, the United States took the position that Defendant's conduct that led to an arrest by Clay County, Kentucky Sheriff's deputies constituted four state crimes: terroristic threatening, resisting arrest, criminal mischief, and public intoxication .[1] *Id.* at 4, 6–9. Judge Ingram heard testimony from one of the Clay County Sheriff's deputies that completed the arrest, as well as Mr. Bentley's federal probation officer. *Id.* at 4. After presentation of the evidence, Mr. Bentley conceded to Violation #2 and also conceded that the evidence introduced supported the terroristic threatening and resisting arrest charges underlying Violation #1. *Id.* at 3–4. However, Mr. Bentley continued to contest both the criminal mischief and public intoxication charges. *Id.* at 4. Based upon the testimony and evidence introduced, Judge Ingram found that the terroristic threatening, criminal mischief, and resisting arrest charges, three of the four charges underlying Violation #1, were established by a preponderance of the evidence. *Id.* at 4. Judge Ingram further advised that he would be taking the remaining charge, public intoxication, under advisement. *Id.*

At the conclusion of the final hearing, the parties did not offer a jointly recommended sentence. [R. 459 at 11.] The United States argued for twelve months of imprisonment, along with twelve months of supervised release. *Id.* Defense counsel argued for seven to eight months of imprisonment with no supervised release term. *Id.*

Judge Ingram then issued a Recommended Disposition, finding that Mr. Bentley was

---

[1] The Recommended Disposition indicates that the state court matter was "dismissed without prejudice on December 9 on the Commonwealth's motion because Defendant was in federal custody." [R. 459 at 3 fn. 3.]

3

guilty of all four charges underlying Violation #1 and recommending that Mr. Bentley be found guilty of both Violation #1 and #2. *Id.* at 14. Ultimately, Judge Ingram recommended revocation of Mr. Bentley's supervised release and a term of nine months of imprisonment, followed by a twenty-four-month term of supervised release. *Id.* at 14.

B

Under Federal Rule of Civil Procedure 72(b)(2), a petitioner has fourteen days after service to register any objections to the Recommended Disposition or else waive his rights to appeal. In order to receive *de novo* review by this Court, any objection must be specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d. 981, 994 (6th Cir. 2007) (quoting *Smith v. Chater*, 121 F.3d 709, 1997 WL 415309, at *2 (6th Cir. 1997) (unpublished opinion)). A general objection that fails to identify specific factual or legal issues from the Recommendation, however, is not permitted, since it duplicates the magistrate's efforts and wastes judicial economy. *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991).

Mr. Bentley, through counsel, made two timely objections to the Recommendation. [R. 460.] First, Mr. Bentley objected "to the Magistrate Judge's Report and Recommendation as it relates to Violation #1, and argues that the burden of evidence was not met by the testimony of the arresting officer, Clay County Deputy Brandon Edwards." *Id.* at 1. Second, Mr. Bentley objected to the Magistrate Judge's recommendation of imprisonment for 9 months, followed by twenty-four months of supervised release. *Id.* at 1–2. Mr. Bentley's objections are sufficiently definite to trigger this Court's obligation to conduct a *de novo* review. *See* 28 U.S.C. § 636(b)(1)(c).

Following the filing of the objections, an allocution hearing was held pursuant to Defendant's request. [*See* R. 464.] At the hearing, the Court heard argument of counsel for both Mr. Bentley and the United States and also heard from Mr. Bentley concerning his alleged conduct. *Id.* At that conclusion of the hearing, this Court took the objections under advisement, in light of certain requests by defense counsel concerning review of the record. *Id.* The Court has now satisfied its obligation to conduct a *de novo* review, reviewing the entire record, including the briefing, the parties' arguments, relevant case law and statutory authority, as well as applicable procedural rules. For the following reasons, Defendant's objections will be **OVERRULED** in part and **SUSTAINED** in part.

## II

### A

The Court first considers Mr. Bentley's objection to Recommended Disposition's findings as it relates to Violation #1. This objection argues broadly that, as to Violation #1, "the burden of evidence was not met by the testimony of the arresting officer, Clay County Deputy Brandon Edwards." [R. 460 at 1.] This objection is unavailing and will be overruled.

As an initial matter, the Court notes that at the final hearing in front of Judge Ingram and the allocution hearing, defense counsel "conceded that the evidence supported the charges of terroristic threatening and resisting arrest." [*See* R. 459 at 4.] As such, the legal significance of continued objection to the findings relating to the remaining state charges is unclear, given that "a finding of guilt on any of the four charged state crimes could support Violation #1." *Id.* Regardless, this Court will consider the findings of Judge Ingram, specifically as it relates to the two remaining state charges, criminal mischief and public intoxication.

Judge Ingram largely relied upon the clear and uncontroverted testimony of Deputy Edwards in finding that these two charges had been proven by a preponderance of the evidence. *Id.* at 6–8. The Court will first address the public intoxication charge. At the allocution hearing, defense counsel only contested the findings of Judge Ingram concerning one of the elements of the charge—namely whether the evidence showed Mr. Bentley was "manifestly under the influence of a controlled substance," the second element to be proven for public intoxication. *See id.* at 7. However, the only colorable argument advanced by defense counsel against such a finding was a conclusory contention that Mr. Bentley quickly calmed down once he arrived at the jail. The Court acknowledges that sudden calm behavior may indicate lack of intoxication, especially as it relates to methamphetamine intoxication. However, such an argument is insufficient, in view of the preponderance of the evidence standard, to combat the testimony from Deputy Edwards concerning Mr. Bentley's "bizarrely aggressive behavior" and general physical disposition. *Id.* at 7–8. To this point, it was proper for Judge Ingram to credit Deputy Edward's assessment of Mr. Bentley's perceived intoxication, given Deputy Edward's experience as a peace officer and the aggressive behavior to which Mr. Bentley admitted. *Id.* The objection concerning the public intoxication charge must be overruled.

Next, the Court turns to the objection to Judge Ingram's finding that Mr. Bentley was guilty of third-degree criminal mischief. Under state law, a criminal mischief charge is proper where an individual "intentionally or wantonly defaces, destroys or damages any property[.]" KRS § 512.040(1)(a). As to this charge, "Deputy Edwards testified that his uniform shirt was defaced and damaged with grass stains during the tussle with Defendant," and, further, that "during the kerfuffle, the pins broke off the name plate on his shirt." [R. 459 at 9.] Defense counsel argued at the final hearing that the tumble that led to these damages was not necessarily

Mr. Bentley's fault, supposedly implying that the deputies were at fault.  *Id*.  This is not a colorable argument.  The property damages stemmed from Mr. Bentley resisting arrest for charges that defense counsel concedes were legitimate.  Any objection to a finding that Mr. Bentley was at fault for the ensuing damages must be overruled.

**B**

This brings the Court, lastly, to Mr. Bentley's objection to Judge Ingram's recommended sentence.  Mr. Bentley objects to both the nine-month term of imprisonment recommended by Judge Ingram, and the twenty-four months of supervised release.  [R. 460 at 1–2.]

Judge Ingram appropriately considered the 18 U.S.C. § 3553 factors in reaching his recommended sentence.  It is important to note that Mr. Bentley's alleged conduct of using illegal drugs is similar to this original conviction and prior supervision violations.  Further, the intoxication charge aside, Mr. Bentley was belligerent and physically aggressive with law enforcement.  Such conduct is serious and must be punished.

Judge Ingram also noted that this is Mr. Bentley's second revocation and the third instance in which Probation has sought revocation.  *Id.* at 12.  In each supervised release term to this point, Mr. Bentley was unable to go more than ten months without committing a violation.  *Id.* at 1–2.  It is apparent that prior run-ins with law enforcement, at both the state and federal level, have not motivated Mr. Bentley to change his behavior.

Relatedly, the Court reminds Mr. Bentley that the primary wrong in the supervised release context is the violation of the Court's trust.  Continued supervised release violations are not to be taken lightly.  The Court must impose a punishment that deters Mr. Bentley's behavior and motivates behavioral change in the future.  In light of Mr. Bentley's representations at the

7

allocution hearing, the Court is hopeful he can exercise self-discipline to avoid any further negative interaction with law enforcement.

The Court has examined the record and arguments made during the allocution hearing and agrees with Magistrate Judge Ingram's reasoning and recommended term of imprisonment. The objection as it relates to the term of imprisonment will therefore be overruled. However, after review of the record, the Court finds that defense counsel's objection concerning the supervised release portion of the sentence, as represented in the Recommended Disposition, is meritorious.

At the allocution hearing, defense counsel asked the Court to review the record to determine whether Judge Ingram intended to recommend twenty-four months of supervised release, as is represented in the final section of the Recommended Disposition. [R. 459 at 14.] Counsel believed it was possible that this recommended term of supervised release was an error, as it conflicted with earlier portions of the Recommended Disposition and what Judge Ingram stated at the final hearing. *See id.* at 13 ("The Court recommends a sentence at the top of the Range—nine months—to be followed by another year of supervised release.").

After review of the record, including the audio recording of the final hearing [*see* R. 456], the Court concludes that Judge Ingram intended to recommend a one-year term of supervised release, as opposed to a two-year term. In the audio recording of the final hearing, Judge Ingram explicitly states that he would be recommending "one year of supervised release." [R. 456.] Further, the twenty-four-month recommendation is not mentioned anywhere else other than the final section. As such, that recommendation appears to be a scrivener's error. For this reason, Mr. Bentley's objection as it relates to term of supervised release will be sustained. Instead of a two-year term, the Court will impose a one-year term of supervised release.

**III**

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED:**

1. The Defendant's Objections [**R. 460**] to the Magistrate Judge's Report and Recommendation [R. 459] are **OVERRULED in part and SUSTAINED in part**;

2. The Magistrate Judge's Report and Recommendation [**R. 459**] is **ADOPTED IN PART** as explained by this order;

3. Christopher Bentley is found to have violated the terms of his Supervised Release as set forth in the Petition filed by the U.S. Probation Office and the Recommended Disposition of the Magistrate Judge;

3. Mr. Bentley's supervised release is **REVOKED**;

4. Mr. Bentley is **SENTENCED** to the Custody of the Bureau of Prisons for a nine-month term of imprisonment; and

5. Following his release from incarceration, Mr. Bentley is to be placed on supervised release for a term of twelve months under the conditions originally imposed.

This the 7th day of February, 2020.

Gregory F. Van Tatenhove
United States District Judge